UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRE ISLAND RETREAT, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION NO. |
| PLAINTIFF, | : : | |
| v. | : : | |
| BRIT GLOBAL SPECIALTY USA, INC., and LLOYD'S OF LONDON | : : : | |
| DEFENDANTS. | : : | COMPLAINT JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Fire Island Retreat, individually and on behalf of all others similarly situated, files this action against certain underwriters for Lloyd's of London known as Brit Global Specialty USA, Inc. (BRIT Syndicate No. 2987) and Lloyd's of London subscribing to Policy Number B0507L19MKSFL000081-00 ("Defendants") and alleges as follows:

## INTRODUCTION

1. Our nation is fighting the COVID-19 pandemic. The measures necessary to combat this pandemic are extreme, requiring the closure of businesses and schools, and restricting almost all public activities. This impact on the United States economy has, and will continue to have, a devastating effect on businesses.

2. Many businesses, including Plaintiff's bed and breakfast establishment, have suffered immediate and precipitous losses. This impact on businesses has, and will continue to have, a devastating effect on our nation's economy.

3. To protect his property and the income from the operation of the bed and breakfast, Plaintiff purchased a property insurance policy from Defendants with policy number B050719MKSFL000081-00 ("Policy").

4. The Policy was issued and underwritten by Defendants Lloyd's of London subscribing to Policy Number B0507L19MKSFL000081-00 and underwriters for Lloyd's of London known as Brit Global Specialty USA, Inc., BRIT Syndicate No. 2987.

5. The Policy is a bilateral contract: Plaintiff agreed to pay premiums to Defendants, in exchange for Defendants' promise of coverage for certain losses.

6. Among other types of coverage, the Policy protects Plaintiff against loss of business income due to a suspension of operations of his bed and breakfast. This type of coverage is referred to as business interruption coverage.

7. The Policy provides "Civil Authority" coverage under which the Defendants promise to pay for loss of business income caused by the action of a civil authority prohibiting access to Plaintiff's bed and breakfast business.

8. Plaintiff complied with the obligations under the Policy and paid the premiums as charged.

9. As a result of COVID-19, Plaintiff was forced to suspend business operations at the bed and breakfast in March 2020. This suspension, which is ongoing, has caused Plaintiff to suffer significant losses and to incur substantial expenses.

10. Under the Policy, Defendants promised to cover these losses and expenses, and are obligated to pay for them. But in deliberate breach of their contractual obligations, Defendants have failed to pay for these losses and expenses.

11. Had Defendants wanted to exclude the risks of a pandemic, and the necessary public health countermeasures that would mandate closures of businesses and population-wide social distancing, they should have done so plainly, as they did with numerous other risks. But they did not.

12. Upon information and belief, Defendants failed to pay for similar losses and expenses suffered by at least several hundred other insureds holding policies that are, in all material respects, identical. Plaintiff brings this action on behalf of his business, and all other similarly situated businesses, seeking declaratory relief, insurance coverage owed under Defendants' policies, and damages.

## JURISDICTION

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than one-hundred members in the proposed class, and at least one member of the Class of Plaintiffs is a citizen of a state different from at least one Defendant. This Court also has subject matter jurisdiction under 28 U.S.C.§§ 2201 and 2202 and its authority to grant declaratory relief under these statutes.

14. This Court has personal jurisdiction over Defendants because Defendants conduct, engage in, and carry out business in this District. Defendants also purposefully availed themselves of the opportunity of conducting activities in this District by marketing their insurance policies and service within the state, and intentionally developed relationships with brokers, agents, and customers within the District to insure properties.

15. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the instant action occurred in this District.

## THE PARTIES

16. At all relevant times, Joseph Scholtz was and is a sole proprietor, maintaining his bed and breakfast business, Fire Island Retreat, at 465 Fishermans Path, Fire Island Pines, New York 11782.

17. Defendant Lloyd's of London, subscribing to Policy No. B050719MKSFL000081-00, is an insurance market located in London, United Kingdom. Insurance underwriters for Lloyd's of London form syndicates to jointly price and underwrite risk. These syndicates enter into insurance contracts on behalf of its members, and the members share the premiums, risk and liability on these contracts. Each Lloyd's syndicate is identified by its syndicate number.

18. Underwriters for Lloyd's of London known as BRIT Syndicate No. 2987 are underwritten by Brit Global Specialty USA, Inc., which is an Illinois corporation with its principal place of business at 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601 (Chicago Headquarters).

19. The Defendants are insurance underwriters who contracted, by and through the syndicates of which they are members, to insure Plaintiff's business. As indicated in Plaintiff's Policy, the underwriters include members of the Lloyd's syndicate No. 2987, which is maintained by Brit Global Specialty USA, Inc.

20. At all times material, Defendants engaged in substantial activity on a continuous and systematic basis, by issuing and selling insurance policies in this District and by contracting to insure property across the United States.

21. Under the applicable law and in accordance with the Policy's Service of Suit Clause, service of process on Defendants may be effectuated by serving Mendes & Mount, 750 Seventh Avenue, New York, New York 10019.

## FACTUAL BACKGROUND

### A. CORONAVIRUS PANDEMIC

22. In January 2020, medical reports documented an outbreak of a novel strain of coronavirus, COVID-19, in Wuhan, China. COVID-19 is a highly contagious airborne virus, which rapidly spread across the world, including the United States.

23. COVID-19 was declared a pandemic by the World Health Organization on January 20, 2020.

24. Public health officials have recognized for decades that non-pharmaceutical interventions (NPIs) can slow and stop the transmission of certain diseases. Among these are screening and testing of potentially infected persons, contact tracing and quarantining infected persons, personal protection and prevention, and social distancing. Social distancing is the maintenance of physical space between people.

25. A lack of central planning, shortages of key medical supplies and equipment, and the unfortunate spread of misinformation about the risks of COVID-19 has led to widespread confusion, unrest, and uncertainty regarding the likely course of this pandemic and the appropriate countermeasures necessary to mitigate the damage it has and will continue to cause.

26. In late February, public health officials began advising various governments around the world that one of the most disruptive NPIs, population-wide social distancing, was needed to stop the transmission of COVID-19. Suddenly schools, offices, public transit,

restaurants and shops, parks, and frequently visited spaces were likely to become hot-spots for local transmission of COVID-19.

27. The COVID-19 virus remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.[1]

28. On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") issued guidance that gatherings of more than ten people should not occur due to the increased risk of contracting COVID-19.

### B. CIVIL AUTHORITY ORDERS

29. As a result of the COVID-19 virus, on March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York.

30. On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

31. On March 20, 2020, Governor Cuomo issued a statewide Stay-at-Home Order for all non-essential workers as a result of the COVID-19 pandemic. The Order included a provision where individuals who must go outside must practice social distancing of at least six feet from others. This Order is in effect until at least May 28, 2020.

### C. IMPACT ON PLAINTIFF'S BUSINESS

32. As of March 20, 2020, Plaintiff was no longer able to rent rooms to guests in his bed and breakfast establishment.

33. As the pandemic continued, events scheduled for April and May on Fire Island Pines were cancelled and individuals holding reservations at Plaintiff's bed and breakfast began

---

[1] *See*, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces; *See also*, who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations.

to cancel their reservations. Individuals holding reservations at Plaintiff's bed and breakfast for the summer 2020 months have too cancelled their reservations, resulting in Plaintiff losing most of his summertime business, which is his busiest time of year.

34. As a result of civil authority action, Plaintiff's business has lost substantial income and Plaintiff will continue to lose income over the summer months as visitors to Fire Island Pines continue to cancel their reservations.

35. The civil authority action prohibiting public access to the covered premises and the surrounding areas were issued in response to dangerous physical conditions and caused a suspension of business operations on the covered premises.

36. As a result of the presence of COVID-19, Plaintiff has suffered a suspension of business operations, sustained losses of business income, and incurred expenses.

37. Plaintiff's policy does not exclude the losses suffered by Plaintiff and thereby the policy does provide coverage for the losses incurred by Plaintiff.

38. Plaintiff has complied with the contractual obligations of the policy and is entitled to payment for his losses and expenses.

39. Given the nature of Plaintiff's business, Plaintiff and his insured premises were physically impacted by the probability of COVID-19 contamination and civil authority mitigation efforts.

40. As a result of the civil authority orders, Plaintiff suffered business income, civil authority and other related losses which are covered by the insurance policy he has with the Defendants.

41. Plaintiff specifically sought and paid premiums to Defendants for coverage to ensure the survival of the business due to business closure ordered by the civil authority.

42. The reasonable expectation of Plaintiff was that the business interruption policy included coverage when a civil authority forced closure of businesses for an issue of public safety.

43. Plaintiff filed a notice of loss report in March 2020 seeking coverage for lost business income.

44. As of this filing, Defendants have not paid Plaintiff for his losses nor have Defendants notified Plaintiff if, and when, they will pay his claim for actual loss of business.

45. It was Plaintiff's reasonable expectation that if civil authorities forced closure of his business, the loss of income from such civil authority action would be covered under the policy.

46. As a result of the orders, Plaintiff incurred, and continues to incur, a substantial loss of business income and additional expenses covered under his policy.

## CLASS ALLEGATIONS

47. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further alleges as follows.

48. The Class claims all derive from Defendants' systematic and uniform refusal to pay insureds for losses suffered due to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations.

49. Pursuant to Fed, R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4), Plaintiff brings this action individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

50. Plaintiff seeks to represent nationwide classes defined as:

a. All persons and entities with a property insurance policy, which includes business income coverage issued by any of the Defendants, who suffered a suspension of business due to COVID-19, and for which Defendants have denied or failed to acknowledge or pay for the covered losses.

b. All persons and entities with civil authority coverage under a property insurance policy issued by any of the Defendants, which suffered a loss of business income and expenses as a result of an action of civil authority, and for which Defendants have denied a claim or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses.

51. Excluded from the Class are the Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families, and judicial staff.

52. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

53. This action is brought and may properly be maintained on behalf of each Class proposed under the provisions of Rule 23 of the Federal Rules of Civil Procedure.

54. Although the precise number of members of the Class is unknown, and can only be determined through appropriate discovery, Plaintiff believes, and on that basis alleges that the members of the proposed Class are so numerous that joinder of all members would be impracticable. The local and national media are reporting that thousands of businesses have had insurance claims denied for the loss or damage to physical property and for the actual loss of

business income sustained during the suspension of operations like the orders issued in the State of New York.

55. Questions of law and fact common to the Class exist that predominate over questions affecting only individual members, including *inter alia*:

   a. Whether Plaintiff and Class members suffered a covered loss under the policies issued to members of the class;

   b. Whether Defendants' comprehensive business insurance policies cover claims for lost business income under the circumstances present here;

   c. Whether the terms, definitions, and exclusions that Defendants have relied on to deny coverage are contradictory or ambiguous and therefore, should not be construed against policyholders;

   d. Whether Defendants breached their duty to Plaintiff and Class members by excluding coverage for business income under the circumstances presented here;

   e. Whether Defendants acted in bad faith in denying claims for lost business income without investigation or due consideration of those claims;

   f. Whether Plaintiff and the Class members suffered damages as a result of Defendants' action; and

   g. Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest and costs.

56. Plaintiff is a member of the putative Class. The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by Defendants, and the relief sought is common.

57. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as its interests coincide with, and are not antagonistic to, the other members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection, insurance coverage, and class action litigation.

58. Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23 (b)(3) because:

   a. Questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

   b. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden on courts that individual actions would create.

   c. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually,

outweigh any difficulties that might be argued with regard to the management of the class action.

59. The Class should also be certified pursuant to Fed. R. Civ. P. 23(b)(2) because:

  a. The prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants.

  b. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests.

  c. Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

60. Likewise, particular issues are appropriate for certification under Fed. R. Civ. P. 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

  a. Whether the comprehensive business insurance policies issued by Defendants cover Plaintiff's and Class members' direct physical loss of property and lost business income when following the Public Health Orders;

  b. Whether the coverages for direct physical loss of property and lost business income provided by the comprehensive business insurance policies are precluded by exclusions or other limitations in those policies;

    c.    Whether Defendants breached the contracts by denying comprehensive business insurance coverage to Plaintiff and Class members;

    d.    Whether the sale of these policies with the knowledge that Defendants would not provide coverage for business interruptions associated with public health countermeasures constitutes a breach of contract; and

    e.    Whether Plaintiff and Class members are entitled to actual damages and injunctive relief as a result of Defendants' wrongful conduct.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT

61. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further alleges as follows.

62. Plaintiff brings this Count individually and on behalf of the other members of the Class.

63. Plaintiff purchased a comprehensive business insurance policy from Defendants.

64. Plaintiff paid all premiums required to maintain its comprehensive business insurance policy in full force.

65. The comprehensive business insurance policy includes provisions that provide coverage for the direct physical loss of use of its premises and equipment as well as actual loss of business income and extra expenses sustained during the suspension of operations as a result of the loss of use and risk of physical loss.

66. In March 2020, the governor of New York issued a series of Public Health Orders that severely restricted Plaintiff's business.

67. These Public Health Orders also applied to the businesses, schools, museums, and public attractions, and residents of and visitors to the State of New York.

68. As a result of the Public Health Orders, Plaintiff lost substantial business income.

69. These losses are insured losses under several provisions of Plaintiff's comprehensive business insurance policy including provisions covering direct loss of property, loss of business income, extended loss of business income, and business income from dependent properties.

70. There are no applicable, enforceable exclusions or definitions in the insurance policies that preclude coverage for these losses.

WHEREFORE, Plaintiff seeks a declaration for itself and similarly situated businesses that its business income losses are covered and not precluded by exclusion or other limitations in its comprehensive business insurance policy.

## COUNT II: BREACH OF CONTRACT

71. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further alleges as follows.

72. Plaintiff and Class members purchased comprehensive business insurance policies from Defendants to ensure against all risks (unless specifically excluded) a business might face. These policies were binding contracts that afforded Plaintiff and Class members comprehensive business insurance under the terms and conditions of the policies.

73. Plaintiff and Class members met all or substantially all of their contractual obligations, including paying all premiums required by Defendants.

74. Beginning in March 2020, the Governor of New York issued a series of Public Health Orders. As detailed above, these Orders ultimately banned gatherings of more than ten

people; prohibited table seating, sit-down consumption, and standing service at restaurants; closed all non-essential businesses; ordered all New York residents to stay at their place of residence, except to obtain food and essential household goods or to engage in Essential Business Activities; and required restaurants to adopt social distancing measures similar to those imposed on grocery stores and other retail food sellers, such as maintaining a minimum distance of six feet from each person who is not part of the same household. As of the date of the filing of this Complaint, these mandates remain in effect until at least May 15, 2020.

75. Beginning with March 2020 and continuing through the date of the filing of this Complaint, Plaintiff and Class members suffered the direct physical loss of property and lost business income following the Public Health Orders, which were covered under the comprehensive business insurance policies purchased from Defendants.

76. There are no applicable, enforceable exclusions in Plaintiff's and Class members' comprehensive business insurance policies that preclude coverage.

77. Defendants breached their contracts by denying comprehensive business insurance coverage to Plaintiff and Class members.

78. As a direct and proximate result of Defendants' denial of comprehensive business insurance coverage to Plaintiff and Class members, Plaintiff and Class members suffered damages.

WHEREFORE, Plaintiff seeks judgement for himself and Class members, seeks compensatory damages resulting from Defendants' breaches of Plaintiff's policy and other Class members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, seeks the following relief:

1. An Order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested, and finding that Plaintiff is a proper representative of the Class requested herein, and appointing Plaintiff's undersigned counsel as Counsel for the classes;

2. Entering a declaratory judgment in favor of the Plaintiff and Class members for their losses sustained related to the COVID-19 pandemic, which are covered under Defendants' comprehensive business insurance policies;

3. Plaintiff requests damages, attorneys' fees and costs, and such other and further relief as is just and proper as compensation for Defendants' breach of contract;

4. An order requiring Defendants to pay both pre and post judgment interest on any amounts awarded;

5. An award of costs and attorneys' fees; and

6. Such further relief as may be appropriate.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 or the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action of all issues so triable.

May 15, 2020
/s/ *Dianne M. Nast*
Dianne M. Nast (PA Atty. ID No. 24424)
Daniel N. Gallucci (PA Atty. ID No. 81995)
Joanne E. Matusko (PA Atty. ID No. 91059)
**NastLaw LLC**
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302

Email:  dnast@nastlaw.com
dgallucci@nastlaw.com
jmatusko@nastlaw.com

Michael L. Roberts
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474
mikeroberts@robertslawfirm.us

*Attorneys for Plaintiff*